UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
PEDRO ORTEGA, individually and on     :     15 Civ. 9183 (JCF)
behalf of others similarly            :
situated,                             :          MEMORANDUM
                                      :         AND  ORDER
            Plaintiff,                :
                                      :
    - against -                       :
                                      :
JR PRIMOS 2 RESTAURANT CORP.          :
(d/b/a JR PRIMOS 2) and ROBERTO       :
VALENZUELA,                           :

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/16/17

                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiff, Pedro Ortega, brings this action against JR Primos 2 Restaurant Corp. ("JR Primos 2") and Roberto Valenzuela alleging violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL").[1] After counsel for the defendants withdrew in December 2016, I ordered the defendants to advise the Court whether they had retained new counsel or planned to proceed pro se by January 16, 2017, and warned that failure to comply with the Order could result in the entry of a default judgment. (Order dated Dec. 14, 2016). The defendants failed to comply with the Order, and the plaintiff moved for entry of a default judgment, in response to which I ordered an inquest to

----

[1] On August 5, 2016, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).

determine damages. (Memorandum Endorsement dated Feb. 6, 2017).
The defendants did not appear at the inquest, which was held on
April 4, 2017. The following findings are therefore based on
evidence provided by the plaintiff. For the reasons set forth
below, judgment by default is entered against the defendants, and
the plaintiff is awarded $46,929.45 in unpaid wages, $11,431.16 in
prejudgment interest, $46,929.45 in liquidated damages, and
$5,102.50 in attorneys' fees and costs.

Background

Mr. Ortega worked as a deliveryman and dishwasher at JR Primos
2, a restaurant owned and operated by Roberto Valenzuela.
(Complaint ("Compl."), ¶¶ 3, 7, 41; Tr. at 4-5).[2] He alleges that
the defendants violated the FLSA and the NYLL by failing to pay
him minimum wage, overtime, and "spread-of-hours" compensation.
(Compl., ¶ 16). Specifically, he alleges that he worked at JR
Primos 2 from August 2011 through November 20, 2015, the date on
which he filed the Complaint. (Compl., ¶¶ 21, 41); that he worked
seven days per week from 6:00 a.m. to 4:00 p.m. without any breaks
for meals or rest (Compl., ¶¶ 48, 51); and that he was paid $370.00
in cash per week (Compl., ¶¶ 49-50). He alleges further that the
defendants never provided him with written notice of his rate of
pay, provided wage statements, provided notice of how his tips

---

[2] "Tr." refers to the transcript of the inquest held on April
4, 2017.

2

were credited toward his wages, or tracked the hours that he worked. (Compl., ¶¶ 52-56). Finally, he alleges that the defendants required him to purchase a bicycle, helmet, jacket, and bike lights to complete his duties as a deliveryman at a total cost of $325.00. (Compl., ¶ 58).

In addition to the allegations in the Complaint, Mr. Ortega supported his application for damages with his own testimony at the inquest. He could not recall the specific dates of his employment at the hearing. Rather, he testified that he worked at JR Primos 2 for four years beginning "in the summertime" four years ago. (Tr. at 6). He also testified that he worked from 5:00 a.m. to 4:00 p.m. every day (Tr. at 7-8), as opposed to starting the day at 6:00 a.m. Finally, he testified that he was paid $350.00 per week for the first three years of his employment and $370.00 per week during the final year of his employment (Tr. at 7-8), as opposed to $370.00 per week throughout the duration of his employment. The remainder of Mr. Ortega's testimony -- the defendants' failure to provide him with notice of his rate of pay, provide wage statements, provide notice of how his tips were credited to his wages, track his hours worked, or reimburse him for purchasing "tools of the trade" -- is consistent with the allegations in the complaint. (Tr. at 9-11).

Discussion

A.   Liability

Where a defendant has defaulted, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. See <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.</u>, 109 F.3d 105, 108 (2d Cir. 1997); <u>Keystone Global LLC v. Auto Essentials, Inc.</u>, 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015). The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff. See, e.g., <u>Grammar v. Sharinn & Lipshie, P.C.</u>, No. 14 Civ. 6774, 2016 WL 4249155, at *2 (S.D.N.Y. Aug. 5, 2016). Nonetheless, a court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." <u>Hood v. Ascent Medical Corp.</u>, No. 13 Civ. 628, 2016 WL 1366920, at *14 (S.D.N.Y. March 3, 2016) (alterations in original) (quoting <u>City of New York v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 137 (2d Cir. 2011)).

1.   Prerequisites for FLSA and NYLL Coverage

The plaintiff's allegations establish that the defendants are subject to liability under the FLSA and the NYLL. The Complaint alleges that JR Primos 2 was an enterprise engaged in interstate commerce that had revenue of at least $500,000 annually. (Compl., ¶¶ 37-38). It alleges further that Mr. Valenzuela had control

over employment practices at the restaurant. (Compl., ¶¶ 26-27, 36). JR Primos 2 is therefore an "enterprise engaged in commerce" under the FLSA, and the defendants qualify as "employers" under both the FLSA and the NYLL. 29 U.S.C. § 203(d), (r)(1), (s)(1)(A)(i)-(ii); NYLL §§ 190(2)-(3), 198(1)-(4), 651(5)-(6); Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." (internal citation omitted) (quoting Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33 (1961))); Rosas v. Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 13 (S.D.N.Y. 2015) ("[D]istrict courts in this Circuit have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA." (second alteration in original) (quoting Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013))). The plaintiff also alleges that he was an employee of JR Primos 2. (Compl., ¶ 5). Thus, the prerequisites for coverage under both the FLSA and NYLL are met.

### 2.    Statute of Limitations

The statute of limitations is six years for claims under the NYLL and three years for claims under the FLSA if a defendant's acts are willful. 29 U.S.C. § 255(a); NYLL §§ 198(3), 663(3); Herrara v. 12 Water Street Gourmet Cafe, Ltd., No. 13 Civ. 4370, 2016 WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016). The Complaint,

filed on November 20, 2015, properly pleads willfulness (Compl.,
¶¶ 71-78), so the plaintiff may recover under the FLSA for
violations occurring after November 19, 2012, and under the NYLL
for violations occurring after November 19, 2009.

### 3. Unpaid Minimum Wage

Both the FLSA and the NYLL mandate that employees be paid at
least a minimum hourly rate.[3] 29 U.S.C. § 206(a)(1); NYLL § 652(1);
N.Y. Comp. Codes R. & Regs. tit. 12 ("12 NYCRR"), § 146-1.2. "The
federal minimum wage does not preempt the state minimum wage, and
a plaintiff may recover under whatever statute provides the highest
measure of damages." Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635,
2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal citation
omitted), report and recommendation adopted, 2011 WL 2038973
(S.D.N.Y. May 24, 2011). In the period at issue -- August 2011 to
November 20, 2015 -- the plaintiff was entitled to a minimum wage
of $7.15 per hour from August 2011 to November 19, 2012,[4] see NYLL

---

[3] Although "[b]oth the FLSA and the NYLL permit an employer
to pay a tipped worker a cash wage that is lower than the statutory
minimum wage, provided that the cash wage and the employee's tips,
taken together, are at least equivalent to the minimum wage," this
"tip credit" is available only if certain notice requirements are
met. Inclan v. New York Hospitality Group, Inc., 95 F. Supp. 3d
490, 497-98 (S.D.N.Y. 2015) (citing 29 U.S.C. §§ 203(m), 206(a)(1),
and 12 NYCRR §§ 146-1.3(b), 146-2.2). The plaintiff alleges that
he was not informed of any tip credit on his wages. (Compl., ¶¶
52-53). Moreover, it is the employers' burden to show that they
have complied with the notice requirements. Inclan, 95 F. Supp.
3d at 497. Since JR Primos 2 and Mr. Valenzuela have not appeared,
they have not made the required showing here.

§ 652(1); $7.25 per hour from November 20, 2012, to December 30, 2013, see 29 U.S.C. § 206(a)(1); NYLL § 652(1) $8.00 per hour from December 31, 2013, to December 30, 2014, see 29 U.S.C. § 206(a)(1); NYLL § 652(1); and finally to $8.75 per hour from December 31, 2014, to November 20, 2015, see 29 U.S.C. § 206(a)(1); NYLL § 652(1).

When an employee is paid a flat weekly salary, "there is a rebuttable presumption that [it] covers 40 hours," which an employer can overcome "by showing the existence of an employer-employee agreement that the salary cover a different number of hours." Yuquilema v. Manhattan's Hero Corp., No. 13 Civ. 461, 2014 WL 4207106, at *5 (S.D.N.Y. Aug. 26, 2014) (quoting Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)). The defaulting defendants have provided no evidence to rebut the presumption here. The plaintiff's weekly salary should therefore be divided by forty hours per week in determining whether the defendants violated the minimum wage laws. The lowest weekly salary the plaintiff alleges is $350.00, or $8.75 per hour ($350 per week/40 hours per week). At no point during the plaintiff's employment was the minimum wage above $8.75 per hour. Therefore, the plaintiff has not established liability for unpaid minimum

---

[4] The FLSA minimum wage during this time period was $7.25 per hour, see 29 U.S.C. § 206(a)(1), but the statute of limitations bars recovery under the FLSA during this time period.

wages based on his weekly salary.

However, the plaintiff also alleges that the defendants failed to pay him at all for an unspecified "extended period of time" (Compl., ¶ 50); his testimony clarifies that he was not paid for one full week of work at the end of his employment (Tr. at 11). The testimony therefore establishes liability for unpaid minimum wages during that week.

### 4. Unpaid Overtime

Both the FLSA and the NYLL provide that a non-exempt employee must be paid one and one-half times his regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); 12 NYCRR § 146-1.4. The plaintiff alleges that he worked more than forty hours per week during every week that he worked for the defendants and that he was not compensated at one and one-half times his regular hourly rate for hours worked in excess of forty hours per week. (Compl., ¶¶ 15, 47-50). Therefore, he has established the defendants' liability for unpaid overtime under the FLSA and the NYLL.

### 5. Unpaid Spread-of-Hours Premium

The "spread-of-hours" provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly rate" for any day where the employee works in excess of ten hours. 12 NYCRR § 146-1.6. Employers are required to pay spread-of-hours wages for "all employees in restaurants and all-year hotels,

regardless of a given employee's regular rate of pay." 12 NYCRR § 146-1.6(d); see also Saravia v. 2799 Broadway Grocery LLC, No. 12 Civ. 7310, 2014 WL 2011720, at *5 n.4 (S.D.N.Y. May 16, 2014). The plaintiff alleges that he worked exactly ten hours per day (6:00 a.m. to 4:00 p.m.) throughout the duration of his employment.[5] (Compl., ¶ 48). As the regulations only require a spread-of-hours premium to be paid when an employee works in excess of ten hours on a given day, the plaintiff has failed to establish liability for any unpaid spread-of-hours pay. See Bedasie v. Mr. Z Towing, Inc., No. 13 CV 5453, 2017 WL 1135727, at *39 n.56 (E.D.N.Y. March 24, 2017) (spread-of-hours pay not awarded where plaintiff worked for exactly ten hours per day).

> 6. Tools of the Trade

Under the FLSA, an employer may not shift the cost of purchasing "tools of the trade" to an employee if "the cost of such tools cuts into the minimum or overtime wages required to be paid him under the [FLSA]." 29 C.F.R. § 531.35; see also Tian v. Ollies 42nd LLC, No. 15 Civ. 5499, 2016 WL 6900684, at *2 (S.D.N.Y.

_____

[5] Although the plaintiff testified that he worked from 5:00 a.m. to 4:00 p.m., or eleven hours per day, inconsistencies in the plaintiff's submissions on a damages inquest are resolved in favor of the defendants. See Coulibaly v. Millenium Super Car Wash, Inc., No. 12 CV 4760, 2013 WL 6021668, at *7 (E.D.N.Y. Nov. 13, 2013). The plaintiff also testified that he sometimes arrived early or stayed late (Tr. at 11-12), but this testimony is not sufficiently specific to determine how often the plaintiff worked more than ten hours per day.

Nov. 22, 2016).  The plaintiff adequately alleges that he was owed unpaid overtime and that the defendants failed to reimburse him for his purchase of a bicycle, bike lights, helmet, and jacket. The bicycle, bike lights, jacket, and helmet are compensable "tools of the trade" for a deliveryman.  See Hernandez v. Jrpac Inc., No. 14 Civ. 4176, 2016 WL 3248493, at *30-31 (S.D.N.Y. June 9, 2016). The plaintiff has therefore established the defendants' liability for the cost of these items.

B.    Damages

Once liability has been established, the plaintiff must provide evidence establishing the amount of damages with reasonable certainty.  Transatlantic Marine Claims Agency, 109 F.3d at 111.  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default."  Lenard v. Design Studio, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).

1.    Actual Damages

In assessing actual damages, inconsistencies in the plaintiff's submissions should be resolved in favor of the defendants.  Coulibaly, 2013 WL 6021668, at *7 ("Where a plaintiff's testimony is found to be inconsistent with corresponding facts submitted to the court or is otherwise not credible, the court must resolve the inconsistencies in favor of

10

the defendant."). Accordingly, the plaintiff should be credited for working at JR Primos 2 from August 15, 2013, to November 20, 2015 -- the latest start date[6] and earliest end date he alleged. (Compl., ¶ 48; Tr. at 6). He should be credited for working seventy hours per week -- 6:00 a.m. to 4:00 p.m., seven days per week -- the lowest number of hours worked he alleged. (Compl., ¶ 48). His rate of pay should be set at $350.00 per week until November 20, 2014, after which his rate of pay should be set at $370.00 per week -- the lowest rates of pay he alleged during those time periods.[7] (Tr. at 7-8). His hourly rates were therefore $8.75 per hour while he was making $350.00 per week ($350/40 hours per week) and $9.25 per hour while he was making $370.00 per week ($370/40 hours per week).[8] His overtime rates for those periods

---

[6] The plaintiff testified at the inquest that he started working for the defendants four years ago "in the summertime," but could not recall the exact date. (Tr. at 6). Because the Complaint alleges that he began working during the month of August, albeit in 2011, I use August 15, 2013 -- the middle of August four years ago -- as an approximation.

[7] The Complaint alleges that the plaintiff was paid $370.00 per week throughout the duration of his employment (Compl., ¶ 50), but he testified that he received $350.00 per week for the first three years of employment and $370.00 per week in the final year of his employment. (Tr. at 7-8). As both the Complaint and the plaintiff's testimony indicate that he was paid $370.00 per week during the last year of his employment, I treat $370.00 per week as his pay rate during the last year of his employment credited here, even though his testimony suggests that his last year of employment was April 2016 to April 2017. (Tr. at 6).

[8] As already discussed, the defendants have not rebutted the presumption that the plaintiff's weekly pay covered forty hours.

were $13.13 per hour ($8.75 x 1.5) and $13.88 per hour ($9.25 x
1.5), respectively.  He was never paid at the overtime rate for
hours worked above forty hours per week.  In addition, he testified
that he was not paid for one week of work at the end of his
employment (Tr. at 11), during which he worked seventy hours at an
hourly rate of $9.25 per hour and an overtime rate of $13.88 per
hour.[9]

Applying these dates, hours, and rates of pay, the plaintiff
has demonstrated damages to a reasonable certainty.  However, I
deduct two weeks of wages per year from the plaintiff's damages
award because it is highly unlikely that he worked every day of
the year for more than two-and-a-half years without taking a single
sick day, vacation day, or day off on a holiday, or that he never
arrived late, left early, or took a single meal or rest break.
See Coulibaly, 2013 WL 6021668, at *8-9.  These damages are
summarized below:

---

[9] Under the FLSA, the plaintiff is only entitled to recover
unpaid hours for the first forty hours worked at the statutory
minimum wage rate.  Kernes v. Global Structures, LLC, No. 15 Civ.
659, 2016 WL 880199, at *3 (S.D.N.Y. March 1, 2016).  However,
under the NYLL, the plaintiff may recover unpaid hours at a rate
higher than the minimum wage if the parties agreed upon the rate.
See Soto v. Armstrong Management Realty Corp., No. 15 Civ. 9283,
2016 WL 7396687, at *2 (S.D.N.Y. Dec. 21, 2016) (collecting cases).
As the defendants agreed to pay the plaintiff $370.00 per week (or
$9.25 per hour) during the last year of his employment, he is
entitled to recover unpaid hours at that rate under the NYLL.  The
plaintiff's straight-time damages under the FLSA for this week,
which would be calculated using the statutory minimum wage rate
rather than the agreed-upon rate, would be slightly lower.

|  | 8/15/13 – 11/20/14 | 11/21/14 – 11/20/15 |
|---|---|---|
| Hourly Rate | $8.75 | $9.25 |
| Overtime Rate | $13.13 | $13.88 |
| Weeks Worked | 64.14[10] | 50.14[11] |
| Unpaid Overtime Hours/Week | 30 | 30 |
| Unpaid Overtime Wages[12] | $25,264.75 | $20,878.30 |
| Unpaid Work Week | $786.40[13] | |
| Actual Damages[14] | $46,929.45 | |

On the other hand, the plaintiff has not established actual damages to a reasonable certainty on his "tools-of-the-trade" claim. Although he testified that the defendants did not reimburse him for purchasing a bicycle, helmet, vest, and bike (Tr. at 10), he did not testify to or otherwise submit evidence of the cost of any of these items.

## 2. Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages. An employer who violates the minimum wage or overtime provisions

---

[10] The time between August 15, 2013, and November 20, 2014 is 66.14 weeks. The number above reflects a two-week deduction from the plaintiff's damages award for a period of slightly more than one year.

[11] The time between November 21, 2014, and November 20, 2015 is 52.14 weeks. The number above reflects a two-week deduction for a period of one year.

[12] Unpaid Overtime Wages = Overtime Rate x Weeks Worked x Unpaid Overtime Hours/Week.

[13] ($9.25 x 40) + ($13.88 x 30) = $786.40.

[14] Actual Damages = Unpaid Overtime Wages + Unpaid Work Week.

of the FLSA is liable for an amount in liquidated damages equal to the amount owed in compensatory damages.[15]  29 U.S.C. § 216(b); Smith v. Nagai, No. 10 Civ. 8237, 2012 WL 2421740, at *4 (S.D.N.Y. May 15, 2012).  Under the NYLL, a prevailing employee is entitled to liquidated damages in the amount of 100% of unpaid wages accrued on or after April 9, 2011.  NYLL §§ 198(1-a), 663(1); Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012).

In Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59 (2d Cir. 2016), the Second Circuit addressed a split among district courts as to whether a plaintiff could be awarded liquidated damages under both statutes for the same violation.  The court held that such "stacked" liquidated damages are not permissible because, after amendments to the NYLL liquidated damages provision in 2009 and 2010, "the NYLL now mirrors the FLSA," and "double recovery is generally disfavored where another source of damages already remedies the same injury for the same purpose."  Id. at 60-61.  Although Chowdhury is a non-precedential panel opinion, a district court is ill advised "to flout germane guidance of a

---

[15] The district court has discretion to deny these damages where an employer shows that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260). Here, the defendants did not appear and thus did not make the required showing.

Circuit Court panel and to substitute its own conclusion of law."[16] United States v. Tejeda, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010). Therefore, "stacked" liquidated damages are disallowed in this case.

Still, the plaintiff should "recover under the statute that provides the great[er] relief." Castillo v. RV Transport, Inc., No. 15 Civ. 527, 2016 WL 1417848, at *3 (S.D.N.Y. April 11, 2016). Here, he is entitled to 100% of his unpaid wages in liquidated damages under both statutes. As his unpaid wages are slightly higher under the NYLL than the FLSA, see supra note 9, I award $46,929.45 in liquidated damages under the NYLL.

C.    Prejudgment Interest

The NYLL provides for an award of prejudgment interest in addition to liquidated damages. See NYLL §§ 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover . . . prejudgment interest as required under the civil practice law and rules, and . . . an additional amount as liquidated damages . . . ."); 663(1) (same); Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 265 (2d Cir.

---

[16] I have previously noted that there are compelling reasons why courts allowed "stacked" liquidated damages before the Chowdhury decision, see Granados v. Traffic Bar & Restaurant, Inc., No. 13 Civ. 500, 2016 WL 7410725, at *4 n.7 (S.D.N.Y. Dec. 21, 2016), but decline to depart from the position adopted by the Second Circuit here.

1999); <u>Chuchuca v. Creative Customs Cabinets Inc.</u>, No. 13 CV 2506, 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014). Prejudgment interest is available on actual damages awarded under the NYLL, but not on liquidated damages. <u>Xochimitl v. Pita Grill of Hell's Kitchen, Inc.</u>, No. 14 Civ. 10234, 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016). New York law sets the relevant interest rate at nine percent per year. CPLR § 5004. Where, as here, the "damages were incurred at various times," the court may compute the interest "upon all of the damages from a single reasonable intermediate date." CPLR § 5001(b); <u>see, e.g.</u>, <u>Tackie v. Keff Enterprises, LLC</u>, No. 14 Civ. 2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) ("In wage and hour cases, courts often choose the midpoint of the plaintiff's employment within the limitations period.").

The plaintiff's actual damages under the NYLL total $46,929.45. That is $4,223.65 in interest per year, or $11.57 in interest per day. He is credited with working at JR Primos 2 from August 15, 2013, through November 20, 2015, a period of 828 days. Accordingly, I award prejudgment interest from October 3, 2014, which is 414 days from the date on which Mr. Ortega began working at JR Primos 2.

D. <u>Attorneys' Fees and Costs</u>

The FLSA and the NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action. 29 U.S.C. § 216(b); NYLL § 198. District courts

have broad discretion when awarding a fee, but must clearly explain the reasons supporting an award. <u>Tackie</u>, 2014 WL 4626229, at *6. "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." <u>Id.</u> "The plaintiff must produce 'contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done.'" <u>Id.</u> (quoting <u>Scott v. City of New York</u>, 626 F.3d 130, 133-34 (2d Cir. 2010)).

The plaintiff seeks attorneys' fees for five timekeepers. Michael Faillace, the Managing Member of Michael Faillace & Associates, P.C., has practiced law since 1983 and has taught employment discrimination law at Fordham University School of Law and Seton Hall University School of Law; he charges $450.00 per hour. (Letter of Joshua S. Androphy dated May 5, 2017 ("Androphy Letter"), at 1). Joshua S. Androphy, a senior attorney at the firm, has been practicing law since 2005; he charges $400.00 per hour. (Androphy Letter at 2). Gerald Ellis, a former associate at the firm, has been practicing law since 2010 and began practicing employment law in 2016; he charges $375.00 per hour. (Androphy Letter at 2). Shawn Clark, an associate at the firm, has been practicing law since 2010 and began practicing employment law in 2013; he also charges $375.00 per hour. (Androphy Letter

at 1-2).  An unnamed paralegal at the firm charges $100.00 per
hour.  (Androphy Letter at 1).

The requested rates for the four attorneys are above what
attorneys at Mr. Faillace's firm and firms like his typically
receive in FLSA cases in this district, particularly in a
straightforward case such as this.  See, e.g., Larrea v. FPC
Coffees Realty Co., No. 15 Civ. 1515, 2017 WL 1857246, at *6
(S.D.N.Y. May 5, 2017) (awarding $350.00 per hour to Mr. Androphy);
Sevilla v. Nekasa Inc., No. 16 Civ. 2368, 2017 WL 1185572, at *5-
6 & n.9 (S.D.N.Y. March 30, 2017) (awarding Mr. Faillace $425.00
per hour and noting that "recent cases . . . usually award [him]
between $400 and $425 per hour"; awarding Mr. Clark $250.00 per
hour and noting that "[r]ecent cases have reduced Clark's hourly
rate from $375 to between $200 and $250"); Andrade v. 168 First
Ave Restaurant Ltd., No. 14 Civ. 8268, 2016 WL 3141567, *11
(S.D.N.Y. June 3, 2016) ("Courts in this Circuit recently have
found $425.00 per hour to be a reasonable rate for Mr. Faillace's
services, and $300 per hour to be a reasonable rate for Mr.
Androphy's services."); Castellanos v. Mid Bronx Community Housing
Management Corp., No. 13 Civ. 3061, 2014 WL 2624759, at *7
(S.D.N.Y. June 10, 2014) ("In labor and employment cases, courts
in this district have approved hourly rates of $300-400 for
partners."); Wong v. Hunda Glass Corp., No. 09 Civ. 4402, 2010 WL
3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (reasonable hourly rate

18

for "employment law litigators with approximately ten years' experience is between $250.00 per hour and $350.00 per hour").

Consistent with the case law above, I award $425.00 per hour to Mr. Faillace, $350.00 per hour to Mr. Androphy, $250.00 per hour to Mr. Clark, and $250.00 per hour to Mr. Ellis, whose experience level is comparable to Mr. Clark's. A rate of $100.00 per hour is reasonable for the paralegal. See Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015).

Plaintiff's counsel has provided contemporaneous time records reflecting the hours each timekeeper spent on this case. (Time Records, attached as Exh. to Androphy Letter). Mr. Faillace bills 4.8 hours for meeting with the plaintiff and drafting the Complaint. (Time Records at 1). Mr. Clark bills 0.2 hours for drafting a motion to adjourn an initial conference. (Time Records at 1). Mr. Ellis bills 10.1 hours for meetings with the plaintiff, communications with opposing counsel, attendance at the pre-trial conference, drafting documents in preparation for the inquest, and attending the inquest. (Time Records at 1-2). Mr. Androphy bills 0.5 hours for drafting and filing the attorneys' fees submission. (Time Records at 2). The paralegal bills 3.5 hours for filing the Complaint electronically, attending the inquest, and translating the plaintiff's testimony at the inquest. (Time Records at 2).

The vast majority of the billing reflects a modest and reasonable number of hours to complete the listed tasks. However,

two reductions are warranted.  First, Mr. Ellis twice bills travel time to and from the courthouse at his regular hourly rate, even though travel time is only compensable at half of an attorney's hourly rate.  LV v. New York City Department of Education, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010).  As Mr. Ellis block-bills his travel time (Time Records at 2), it is unclear precisely how much time he spent traveling.  Accordingly, I assume that fifty percent of the time in the block-billed entries, or 1.9 hours, is travel time, and award the 1.9 hours dedicated to travel at half of his hourly rate.  Second, the paralegal bills three hours for attending the inquest (Time Records at 2), even though the inquest before me lasted less than one hour.  Indeed, Mr. Ellis bills 1.5 hours for attending the inquest, which includes his travel time to and from the courthouse.  (Time Records at 2).  Accordingly, I reduce the paralegal's compensable time for the inquest to one hour.  The plaintiff is awarded $4,702.50 in attorneys' fees:

| Timekeeper | Hours Awarded | Rate Awarded | Total Fees |
|---|---|---|---|
| Faillace | 4.8 | $425.00 | $2,040.00 |
| Androphy | 0.5 | $350.00 | $175.00 |
| Ellis | 8.2 | $250.00 | $2,050.00 |
| Ellis (travel) | 1.9 | $125.00 | $237.50 |
| Clark | 0.2 | $250.00 | $50.00 |
| Paralegal | 1.5 | $100.00 | $150.00 |
| **Lodestar** | $4,702.50 | | |

The plaintiff also seeks recovery of $550.00 in costs for filing the complaint ($400.00) and serving the summons and complaint on the defendants ($150.00). (Androphy Letter at 3). Although these costs are compensable, Siegel v. Bloomberg L.P., No. 13 Civ. 1351, 2016 WL 1211849, at *15 (S.D.N.Y. March 22, 2016), the plaintiff does not submit documents to verify them. The $400.00 filing fee is clearly reflected on the docket (Docket No. 1), but the cost of service of process is not. I therefore award the plaintiff $400.00 in costs. See, e.g., D'Annuzio v. Ayken, Inc., 11 CV 3303, 2015 WL 5308094, at *1 (E.D.N.Y. Aug. 25, 2015).

## Conclusion

For the reasons set forth above, judgment by default is entered against the defendants, and the plaintiff is awarded $46,929.45 in unpaid wages, $11,431.16 in prejudgment interest, $46,929.45 in liquidated damages, and $5,102.50 in attorneys' fees and costs. The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         June 16, 2017

Copies mailed this date to:

Michael A. Faillace, Esq.
Shawn R. Clark, Esq.
Gerrald Ellis, Esq.
Joshua S. Androphy, Esq.
Colin Mulholland, Esq.
Michael Faillace & Associates, P.C.
60 E. 42nd St.
Suite 4510
New York, NY 10165

Roberto Valenzuela
JR Primos 2 Restaurant Corp.
4986 Broadway
New York, NY 10034